**FILED**

AUG - 8 2000

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY_____
        DEPUTY CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----ooOoo----

SAM and CINDY McCRAY, doing
business as SAM & CIN'S 7440
CLUB,

        NO. CIV. S-99-1984 WBS DAD

        Plaintiffs,

    v.               MEMORANDUM AND ORDER

THE CITY OF CITRUS HEIGHTS,
and DOES 1 through 25,
inclusive,

        Defendants.

----ooOoo----

      On cross motions for summary judgment in this case, the court is called upon to determine the constitutionality of the City of Citrus Heights' unique noise ordinance, which requires a Conditional Use Permit for outdoor amplified music between the hours of 10:00 p.m. and 8:00 a.m.  Because the court concludes that the ordinance is unconstitutionally vague, overbroad, and violative of equal protection, plaintiffs' motion is granted and defendants' is denied.

I.  Factual and Procedural Background

        Plaintiffs Sam and Cindy McCray are residents of the

1

E2

1  City of Citrus Heights, California (the "City").  They own a bar

2  located within the City named "Sam & Cin's 7440 Club" (the "7440

3  Club").  On Friday and Saturday nights, the 7440 Club features

4  music, live and recorded, on its outside patio until midnight.

5  Plaintiffs also have outdoor speakers near their backyard

6  swimming pool at their residence.

7        The City was incorporated on January 1, 1997.

8  Thereafter, the City adopted sections 251-23(D)(8) and (10) to

9  the Zoning Code, setting forth Conditional Use Permit ("CUP")

10 requirements for "dancing in a bar or restaurant" and "live or

11 amplified music."  On July 27, 1999, plaintiffs filed suit

12 against the City, challenging sections 251-23(D)(8) and (10) on

13 First Amendment grounds.  On September 13, 1999, the City Council

14 adopted Urgency Ordinance No. 99-16 (the "ordinance"), which

15 repealed the challenged sections of the Zoning Code.  The parties

16 stipulated to dismiss plaintiffs' suit on November 22, 1999.

17       In addition to repealing sections 251-23(D)(8) and

18 (10), the ordinance added a new CUP requirement to the City's

19 Zoning Code.  Specifically, the ordinance requires a CUP "in any

20 zone set forth in the City's Zoning Code for any use involving

21 amplified music at an outdoor location between the hours of 10:00

22 p.m. and 8:00 a.m."  (Urgency Ordinance No. 99-16 § 315-112).

23       The stated purpose of the ordinance is "to regulate

24 late-night outdoor amplified music in order to protect and

25 promote the health, safety, morals, and general welfare of the

26 citizens of the City, and to establish reasonable and uniform

27 regulations to prevent the adverse effects of loud noise at times

28 when such noise is especially likely to cause disturbance."

2

1  (Urgency Ordinance No. 99-16 § 1(1)).   The ordinance further
2  states that its purpose is "to establish reasonable and uniform
3  regulations to enable prudent and reasonable limitations on
4  outdoor noise during times when such noise is most likely to
5  cause disturbance, annoyance, sleep interference, and deleterious
6  health effects associated with sleep disruption."   (Urgency
7  Ordinance No. 99-16 § 315-110).

8         "Any notice, request, or order by any City official
9  that any particular use is subject to and/or out of compliance
10 with [the ordinance] shall be made in writing."   (Urgency
11 Ordinance No. 99-16 § 315-113).   Once such notice has been
12 received, the party has ten days to file an application for a CUP
13 or to file a notice of appeal with the Secretary of the Planning
14 Commission.   (Urgency Ordinance No. 99-16 § 315-114).
15 Enforcement of the CUP requirement is "automatically stayed
16 during the 10-day period following written notice of the
17 applicability of and/or noncompliance" with the ordinance.
18 (Urgency Ordinance No. 99-16 § 315-114).

19        Once a party applies for a CUP or files notice of
20 appeal, an automatic stay of enforcement commences with respect
21 to the particular use at issue.   (Urgency Ordinance No. 99-16 §
22 315-115).   The stay of enforcement continues in effect until:

23        (a) the application for a conditional use permit is
          denied or approved, more than ten days have elapsed
24        since that denial or approval, and no administrative
          appeal to the Planning Commission has been commenced
25        ... challenging that denial or approval; or

26        (b) an administrative appeal to the Planning Commission
          is commenced ..., the Planning Commission acts within
27        60 days of the first hearing on the matter ..., more
          than ten days elapses following the Planning
28        Commission's action, and no administrative appeal to

                              3

1    the City Council of the Planning Commission's action is
     commenced ...; or

2

3    (c) an administrative appeal is to be heard by the City
     Council, either in the first instance or upon appeal
     from or automatic referral from the Planning
4    Commission, the City Council takes final action on the
     appeal, the time period specified in Government Code
5    section 65009 and section 115-39 of the City's Zoning
     Code elapses, and within that period, no person brings
6    a court action or proceeding to attack, review, set
     aside, void, or annul the decision, proceeding, act or
7    determination by the City Council, or to determine the
     reasonableness, legality, or validity of any condition
8    attached to the conditional use permit; or

9    (d) a person brings a court action or proceeding to
     attack, review, set aside, void, or annul the decision,
10   proceeding, act or determination by the City Council,
     or to determine the reasonableness, legality, or
11   validity of any condition attached to the conditional
     use permit, and a judicial officer issues a decision on
12   the merits of the action.  A judicial decision on the
     merits of the action includes a decision regarding any
13   substantive or procedural matters, including but not
     limited to affirmative defenses, that resolves the
14   claims of the petitioner or plaintiff.  A judicial
     officer's decision is on the merits even though there
15   may have been no application of rehearing or appellate
     procedures to that decision.  A stay issued pursuant to
16   Code of Civil Procedure section 1094.5, subdivision
     (g), is not a judicial decision on the merits within
17   the meaning of the Article.

18   (Urgency Ordinance No. 99-16 § 315-115).

19        When applying for a CUP, a party "shall describe the

20   proposed use solely in terms of time of the performance, location

21   of the performance, and outdoor noise levels to be associated

22   with the performance."   (Urgency Ordinance No. 99-16 § 315-117).

23   When deciding whether to grant a CUP application,

24       the planning commission or city council shall find and
         record in writing that the establishment, maintenance
25       or operation of the use, building, or structure applied
         for will not under the circumstances of the particular
26       case be detrimental to the health, safety, peace,
         morals, comfort, or general welfare of persons residing
27       or working in the neighborhood of such proposed use or
         be detrimental or injurious to property and
28       improvements in the neighborhood or the general welfare

4

1    of the City.

2 (City of Citrus Heights Zoning Code ch. 10, art. 3 § 110-30).

3 However, there shall be no inquiry into "the proposed content,

4 style, or type of music that will be performed under the permit."

5 (Urgency Ordinance No. 99-16 § 315-118).  If the applicant or any

6 other person voluntarily discloses information regarding content,

7 style, or type of music that will be performed under the permit,

8 this information may not be considered when determining whether

9 to grant a CUP.  (Urgency Ordinance No. 99-16 § 315-118).

10    A $4,263.00 application fee is required for a CUP.  The

11 fee requirement is not contained in the ordinance.  On January 1,

12 1997, the City incorporated and adopted all Sacramento County

13 zoning ordinances that had previously been applicable to the

14 territory comprising the City.  (Ruggiero Decl. ¶ 4).  Among the

15 Sacramento County ordinances initially adopted by the City and

16 still in force are the provisions setting the fees for reviewing

17 conditional use permit applications.  (Ruggiero Decl. ¶ 7).  The

18 City is currently conducting its first comprehensive cost

19 allocation analysis to determine whether the application fee

20 represents costs incurred by the City in processing CUP

21 applications.  (Ruggiero Decl. ¶ 10).

22    Plaintiffs have not applied for a CUP under the

23 provisions of the ordinance.  The City has never served written

24 notice on plaintiffs to the effect that the 7440 Club or their

25 residence is not in compliance with the ordinance.  In fact, the

26 City has never either enforced the ordinance or issued a CUP

27 pursuant to the ordinance.

28    On October 7, 1999, plaintiffs filed this action for a

5

1  declaratory judgment that the ordinance is unconstitutional under
2  42 U.S.C. § 1983.  Cn December 29, 1999, plaintiffs filed an
3  application for a temporary restraining order and a motion for
4  preliminary injunction.  The court denied plaintiffs' request for
5  a temporary restraining order.  Plaintiffs later withdrew their
6  motion for preliminary injunction.  Both parties now move for
7  summary judgment.[1]

8  II.  Summary Judgment

9      The court grants summary judgment to a moving party "if
10 the pleadings, depositions, answers to interrogatories, and
11 admissions on file, together with the affidavits, if any, show
12 that there is no genuine issue as to any material fact and that
13 the moving party is entitled to judgment as a matter of law."
14 Fed. R. Civ. P. 56(c).  The party adverse to a motion for summary
15 judgment may not simply deny generally the pleadings of the
16 movant; the adverse party must designate "specific facts showing
17 that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e);
18 see also Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).
19 Simply put, "a summary judgment motion cannot be defeated by
20 relying solely on conclusory allegations unsupported by factual
21 data."  Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).  The
22 non-moving party must show more than a mere "metaphysical doubt"
23 as to the material facts.  See Matsushita Elec. Indus. Co. v.
24 Zenith Radio, 475 U.S. 574, 587 (1986).

25      Plaintiffs proceed pursuant to 28 U.S.C. section 1983.

26

27      [1]   The parties have stipulated that no discovery is
   necessary and that this summary judgment motion can be resolved
28 as a matter of law.  (Defs.' Response to Pls.' SUF ¶ 8).

1  See 28 U.S.C. § 1983.  Under section 1983, plaintiffs must

2  establish that (1) the conduct complained of was committed under

3  color of state law and (2) the conduct deprived plaintiffs of a

4  constitutional right.  See Jones v. Community Redevelopment

5  Agency, 733 F.2d 646, 649 (9th Cir. 1984).  The City concedes

6  that the conduct alleged by plaintiffs, if true, was committed

7  under color of state law.  (Defs.' Opp'n at 19:8-10).  Thus, the

8  only issue to be considered by the court is whether the CUP

9  requirement deprives plaintiffs of a constitutional right.

10      A.    Standing

11           "In order to bring an action in federal court, a

12  plaintiff must have suffered 'an injury in fact; that is ... some

13  threatened or actual injury resulting from the putatively illegal

14  action....'"   4805 Convoy, Inc. v. City of San Diego, 183 F.3d

15  1108, 1111 (9th Cir. 1999) (quoting Virginia v. American

16  Booksellers Ass'n, Inc., 484 U.S. 383, 392 (1988)).  "Abstract

17  injury is not enough" to meet this requirement.  City of Los

18  Angeles v. Lyons, 461 U.S. 95, 101 (1983).  "The plaintiff must

19  show that he has sustained or is immediately in danger of

20  sustaining some direct injury as the result of the challenged

21  official conduct and the injury or threat of injury must be both

22  real and immediate, not conjectural or hypothetical."  Id. at

23  101-02 (internal quotations omitted).

24           It is well settled that traditional principles of

25  standing are relaxed in the context of a pre-enforcement

26  challenge to an ordinance on First Amendment grounds, where a

27  violation of the ordinance results in criminal penalties.  See

28  New Hampshire Right to Life Political Action Comm. v. Gardner, 99

1  F.3d 8, 13-15 (1st Cir.1996); <u>see</u> <u>also</u> <u>Virginia v. American</u>

2  <u>Booksellers Assoc., Inc.</u>, 484 U.S. 383, 392 (1988) (the standing

3  requirement of threatened or actual injury is met where "the law

4  is aimed directly at plaintiffs, [and they] will have to take

5  significant and costly compliance measures or risk criminal

6  prosecution.").   In such an instance, plaintiffs are deemed to be

7  injured by the fact that they might be chilled from exercising

8  their right to free expression or forego expression in order to

9  avoid enforcement consequences.   <u>See</u> <u>New Hampshire Right to Life</u>

10  <u>Political Action Comm.</u>, 99 F.3d at 13; <u>Virginia</u>, 484 U.S. at 643

11  (noting that a harm can be realized without enforcement when the

12  danger of an ordinance is self-censorship).

13        So it is here.   The ordinance requires a CUP for "any

14  use involving amplified music at an outdoor location between the

15  hours of 10:00 p.m. and 8:00 a.m."   Plaintiffs play music

16  outdoors at the 7440 Club on Friday and Saturday nights until

17  midnight.   Plaintiffs' conduct is encompassed by the ordinance,

18  requiring them to apply for a CUP.   If they do not apply, they

19  are in violation of the plain language of the ordinance.   A

20  violation of the ordinance results in criminal penalties.[2]   Thus,

21

22        [2]   Under California Government Code section 36900:
23  (a)   Violation of a city ordinance is a misdemeanor unless by
      ordinance it is made an infraction.   Such a violation may be
24      prosecuted by city authorities in the name of the people of
      the State of California, or redressed by civil action.
25  (b)   Every violation determined to be an infraction is punishable
      by (1) a fine not exceeding one hundred dollars ($100) for a
26      first violation; (2) a fine not exceeding two hundred
      dollars ($200) for a second violation of the same ordinance
27      within one year; (3) a fine not exceeding five hundred
      dollars ($500) for each additional violation of the same
      ordinance within one year.
28  Cal. Gov't Code § 36900.

8

1  plaintiffs are faced with the decision of having to go through

2  the burdensome and expensive procedure of applying for a CUP

3  (and, thus, complying with an ordinance they allege is

4  unconstitutional) or risking criminal penalties.  Such a choice

5  presents the danger of self-censorship and is sufficient harm to

6  meet Article III's standing requirements.  Accordingly,

7  plaintiffs have standing to challenge the ordinance even though

8  they have neither applied for a CUP nor received written notice

9  from the City that they are out of compliance with the ordinance.

10         The City argues that the ordinance is not enforced

11  until the City gives written notice of noncompliance and, thus,

12  plaintiffs do not need a CUP until they receive such notice.

13  However, the City's interpretation is not consistent with the

14  plain language of the ordinance, which broadly states that a CUP

15  is required for any use involving outdoor, amplified music during

16  the proscribed times.  The Ordinance does not state that a CUP is

17  only required pursuant to written notice from the City.[3]

18

19         [3]   Even if the ordinance were only enforced pursuant to
    written notification from the City, it is likely that the City
20  will send written notification to plaintiffs.  In its opposition,
    the City states:
21         Since the Urgency Ordinance was adopted, plaintiffs
           have frequently and regularly disturbed the peace and
22         tranquility of Citrus Heights during the late-night
           hours.  It is undisputed that [plaintiffs] regularly
23         amplify outdoor music past the hour of 10:00 p.m. at
           the Club.  In the relatively short time between
24         September 1999 and now, well over twenty citizens of
           the City have officially expressed their displeasure
25         about the late-night loud music at the Club to City
           officials, either via citizen complaint to law
26         enforcement or by petition to the City Council.  Where
           the complaints about late-night music provided
27         reasonable cause, the Citrus Heights Police Department
           dispatched law enforcement officers to advise the Club
28         to turn the volume down.

9

1    B.    Music is Constitutionally Protected

2         The ordinance targets amplified music.  Music is

3    entitled to protection under the First Amendment.  See Ward v.

4    Rock Against Racism, 491 U.S. 781, 790 (1989) ("Music, as a form

5    of expression and communication, is protected under the First

6    Amendment."); Cinevision Corp. v. City of Burbank, 745 F.2d 560,

7    567 (9th Cir. 1984) ("Entertainment, as well as political and

8    ideological speech, is protected; motion pictures, programs

9    broadcast by radio and television, and live entertainment, such

10   as musical and dramatic works, fall within the First Amendment

11   guarantee.") (internal quotations omitted).

12        Even though plaintiffs are not themselves performing

13   the music, but are playing pre-recorded music, they are

14   nonetheless engaging in constitutionally-protected speech.  For

15   example, in Cinevision, the Ninth Circuit considered an argument

16   that a concert promoter's rights were not protected because the

17   promoter was not expressing its views, but merely seeking to make

18   a profit.  See id.  The court rejected this argument, holding

19   that "under the first amendment, there clearly are rights to

20   promote protected expression for profit--including musical

21   expression."  Id. at 568.  Similarly, plaintiffs are engaging in

22   constitutionally-protected speech by playing pre-recorded music

23   _____

24   (Defs.' Opp'n at 5:16-6:2).  Thus, it appears that plaintiffs'
     use of amplified music has "cause[d] disturbance, annoyance," and
25   possibly "sleep interference," and thus that plaintiffs suffer a
     real threat of enforcement.  See, e.g., Stern v. United States
26   Dist. Ct. for Dist. of Mass., _ F.3d _ (1st Cir. 2000) ("In a
     pre-enforcement challenge to a law carrying significant
27   penalties, standing exists when the plaintiff has manifested an
     intention to engage in conduct arguably proscribed by the
28   statute, and there exists a 'credible threat' of enforcement.").

10

1  at the 7440 Club.

2      C.    Vagueness

3          The vagueness doctrine incorporates notions of fair

4  notice or warning by "requir[ing] legislatures to set reasonably

5  clear guidelines for law enforcement officials and triers of fact

6  in order to prevent arbitrary and discriminatory enforcement."

7  Smith v. Goguen, 415 U.S. 566, 572-573 (1974).  "A statute will

8  be struck down on void for vagueness grounds if 'it fails to give

9  adequate notice to people of ordinary intelligence concerning the

10  conduct it proscribes.'"   United States v. Frega, 179 F.3d 793,

11  803 (9th Cir. 1998) (quoting Schwartzmiller v. Gardner, 752 F.2d

12  1341, 1345 (9th Cir. 1984)).  An ordinance is vague if persons

13  "of common intelligence must necessarily guess at its meaning."

14  Broadrick v. Oklahoma, 413 U.S. 601, 607 (1973) (internal

15  quotations omitted).

16          The ordinance's use of the term "amplified" would not

17  put persons of common intelligence on notice of whether the

18  ordinance applies to them.  According to the City, amplified

19  music is not simply music that is channeled through an amplifier

20  or otherwise electronically amplified.  The City argues that

21  "[a]mplified music is that which is enlarged."  (Trans. of May 8,

22  2000 oral argument ("Trans.") at 24:15-16).  However, the

23  ordinance does not indicate how large or great an increase in

24  amplitude is required before the ordinance is applicable.  If

25  someone is playing a radio outdoors at a low volume, but then

26  increases the volume slightly, defining "amplified" as "that

27  which is enlarged" sheds no light on whether such an increase

28  would constitute "amplified" music under the City's use of that

11

1 term.

2       At oral argument, the City attempted to clarify the
3 meaning of "amplified" by arguing that amplified music is
4 "[s]omething that would be enlarged to the extent that it would
5 cause the annoyance that the purpose of the ordinance says."[4]
6 (Trans. at 24:22-24).  However, defining "amplified" music in
7 terms of whether it is annoying lends no further assistance in
8 differentiating amplified music from non-amplified music.  Music
9 that annoys one person may not annoy another person.  Moreover,
10 the ordinance does not specify whose standards one is to use to
11 determine whether music is loud enough to be annoying; i.e.,
12 should an individual rely on his own sensibilities, those of his
13 neighbor, a Planning Commissioner, or a police officer (to name
14 just a few possibilities) when determining whether his "use
15 involving amplified music" requires a CUP?

16       This case is similar to Coates v. City of Cincinnati,
17 402 U.S. 611 (1971), in which the Supreme Court considered
18 whether an ordinance making it a criminal offense for "three or
19 more persons to assemble ... on any of the sidewalks ... and
20 there conduct themselves in a manner annoying to persons passing
21 by ...." was unconstitutionally vague.  See id. at 611-612.  The
22 Court found that the word "annoy" was vague:

23       Conduct that annoys some people does not annoy others.
24       Thus, the ordinance is vague, not in the sense that it

25       [4]    Counsel presumably refers to section 315-110 of the
26 ordinance, which states that the purpose of the ordinance is "to
   establish reasonable and uniform regulations to enable prudent
   and reasonable limitations on outdoor noise during times when
27 such noise is most likely to cause disturbance, annoyance, sleep
   interference, and deleterious health effects associated with
28 sleep disruption."  (Ordinance No. 99-16 at § 315-110).

                                  12

1  requires a person to conform his conduct to an
   imprecise but comprehensible normative standard, but
2  rather in the sense that no standard of conduct is
   specified at all.  As a result, "men of common
3  intelligence must necessarily guess at its meaning."

4  Id. at 614.

5          In sum, the ordinance is unconstitutionally vague

6  because its use of the term "amplified" provides no objective

7  standard for differentiating between music for which a CUP is

8  required from that for which a CUP is not required.

9      D.   Overbreadth

10         The term "overbreadth" is used to "describe the

11 doctrine that allows a litigant whose own conduct is unprotected

12 to assert the rights of third parties to challenge a statute,

13 even though 'as applied' to him the statute would be

14 constitutional."  Secretary of State of Md. v. Joseph H. Munson

15 Co., 467 U.S. 947, 967 n.13 (1984).  "'Overbreadth' has also been

16 used to describe a challenge to a statute that in all its

17 applications directly restricts protected First Amendment

18 activity and does not employ means narrowly tailored to serve a

19 compelling governmental interest."[5]  Id.  Plaintiffs appear to

20 bring both types of overbreadth challenges here.

21         The ordinance directly regulates any use involving

22 amplified music at an outdoor location between 10:00 p.m. and

23 8:00 a.m. by requiring that a CUP be obtained in order to engage

24 in such a use.  Thus, the ordinance on its face directly

25 ───────────────────

26      [5]   The latter form of overbreadth is sometimes referred to
   as a "facial" challenge.  However, "[w]hether a challenge [is]
27 called 'overbreadth' or simply a 'facial' challenge, the point is
   that there is no reason to limit challenges to case-by-case "as
28 applied" challenges when the statute on its face and therefore in
   all its applications falls short of constitutional demands."  Id.

13

1  regulates protected speech.  Accordingly, it must be narrowly

2  tailored to serve a compelling governmental interest.

3          The goal of regulating music that is likely to cause

4  annoyance or sleep disturbance is a compelling governmental

5  interest.  See Ward v. Rock Against Racism, 491 U.S. 781, 796

6  (1989) ("[I]t can no longer be doubted that government 'ha[s] a

7  substantial interest in protecting its citizens from unwelcome

8  noise.'" (quoting City Council of Los Angeles v. Taxpayers for

9  Vincent, 466 U.S. 789, 806 (1984))); see also City of Renton v.

10 Playtime Theatres, Inc., 475 U.S. 41, 50 (1986) ("A city's

11 'interest in attempting to preserve the quality of urban life is

12 one that must be accorded high respect.'" (quoting Young v.

13 American Mini Theatres, Inc., 427 U.S. 50, 71 (1976))).

14         However, the ordinance is not narrowly tailored to

15 serve the City's goal of placing limitations on music that is

16 annoying and likely to cause sleep disruption.  Under the plain

17 language of the ordinance, a CUP is required for any use

18 involving outdoor amplified music during the proscribed times.

19 Unlike more typical noise ordinances, this one contains no

20 reasonable, objective standards, such as decibel levels, under

21 which loud, annoying music is targeted to the exclusion of music

22 that is not loud or annoying.[6]

23 _____

24         [6]  A noise ordinance considered in Dupres v. City of
   Newport, 978 F. Supp. 429 (D. R.I. 1997), was found
25 unconstitutional on similar grounds.  There, the ordinance
   proscribed the following discrete categories of noise: (1) any
26 sound which exceeds the dBA level for such sound set out in the
   noise abatement chapter; (2) any unreasonably loud, disturbing,
27 or unnecessary noise; (3) any noise of such character, intensity,
   or duration as to be detrimental to the life, health, or welfare
28 of any individual; and (4) any noise which either steadily or

                              14

1    The City argues that the ordinance will only be
2  enforced if it is sufficiently annoying and, thus, the ordinance
3  is narrowly tailored to apply only to those situations that serve
4  the City's goals.[7]  However, as noted above, the ordinance is not
5  limited to situations in which the City sends written enforcement
6  that the ordinance applies to a particular use; rather, the
7  ordinance broadly requires that a CUP be obtained in order to
8  engage in any use involving outdoor amplified music during the
9  proscribed times.  Thus, the ordinance is not limited to the
10  situation in which a given use is annoying enough to cause
11  someone to complain to the City.

12    In addition, even under the City's interpretation of
13  the ordinance, whether it would be enforced in any particular
14  case would depend upon subjective criteria.  For example, there
15  is nothing to prevent the ordinance from applying to the
16  neighborhood feud where one neighbor complains about another
17  neighbor playing his radio too loud, but in fact the neighbor is
18  not playing his radio at a level that a reasonable person would
19  think is loud (or even necessarily that the complaining neighbor
20  thinks is too loud).  In such a situation, there is nothing to

21  _____

22  intermittently annoys, disturbs, injures, or endangers the
comfort, repose, peace, or safety of any individual.  The court
23  held that the ordinance was overbroad with respect to the second,
third, and fourth categories because they "invite law enforcement
24  and others to make a determination as to whether the ordinance
has been violated on purely subjective ... criteria."  Id. at
25  435.  However, the first category, under which noise was
proscribed on the basis of its decibel levels, was not overbroad.
26  See id.

27       [7]    Specifically, counsel stated at oral argument: "[T]he
enforcement of the ordinance will never come to pass unless it
annoys somebody off the property.  The property owner wouldn't
28  enforce it against himself."  (Trans. at 25:22-25).

15

1  prevent execution of the ordinance's procedures.  Indeed, the
2  City admitted that in such a situation, "the ordinance clearly
3  spells out what procedures must be taken.  Notification must be
4  given in writing to the alleged offender, and that ... triggers
5  all the procedures."  (Trans. at 26:17-20).

6  　　　　In sum, the ordinance is overbroad because it is not
7  narrowly tailored to serve the City's goals.

8  　　　E.   Equal Protection

9  　　　　"The purpose of the equal protection clause of the
10 Fourteenth Amendment is to secure every person within the State's
11 jurisdiction against intentional and arbitrary discrimination
12 ...."  Village of Willowbrook v. Olech, 120 S. Ct. 1073 (2000)
13 (internal quotations omitted).  Accordingly, when a state
14 governmental entity intentionally treats similarly situated
15 persons differently, such conduct can rise to the level of an
16 equal protection violation.  See id. at 1075; see also e.g.,
17 Estate of Macias v. Ihde, 2000 WL 991870 at *9 (9th Cir.)
18 (arbitrary discrimination in the administration of police
19 services can lead to an equal protection violation).

20 　　　　"Whether analyzed under the First Amendment or under
21 the Equal Protection Clause of the Fourteenth Amendment,
22 discriminatory burdens on First Amendment rights have typically
23 been subjected to strict scrutiny."  Harwin v. Goleta Water
24 Dist., 953 F.2d 488, 491 n.6 (9th Cir. 1991).  "[D]iscrimination
25 in the First Amendment context is permissible only when the
26 government can show that the discrimination is itself necessary
27 to serve a substantial government interest."  Id. at 490.
28 "'[T]he crucial question is whether there is an appropriate

16

governmental interest suitably furthered by the differential
treatment.'" Id. (quoting Police Dep't of the City of Chicago v.
Mosley, 408 U.S. 92, 95 (1972)).  The ordinance burdens the First
Amendment rights of persons wanting to play music at an outdoor
location during the proscribed time.  However, the ordinance does
not burden the First Amendment rights of persons wishing to
engage in other types of protected speech at an outdoor location
during the proscribed times.  Thus, on its face, the ordinance
discriminates among speakers and types of speech.

        The stated purpose of the ordinance is to place
"reasonable limitations on outdoor noise during times when such
noise is most likely to cause disturbance, annoyance, sleep
interference, and deleterious health effects associated with
sleep disruption."  However, the City has not shown that the
distinction drawn between music and other forms of protected
speech serves to prevent disturbance, annoyance, and sleep
interference.  While music may cause sleep interference, other
forms of protected speech such as political and ideological
speech, programs broadcast by radio and television, and live
entertainment such as comedy or dramatic works,[8] could also cause
sleep disruption if played or performed outside.

        Thus, for example, someone could play Rush Limbaugh on
her radio outside during the proscribed times, but her neighbor,
desiring to play a live musical broadcast, would need a CUP in

---

        [8]     "Entertainment, as well as political and ideological
speech, is protected; motion pictures, programs broadcast by
radio and television, and live entertainment, such as musical and
dramatic works, fall within the First Amendment guarantee."
Schad v. Mount Ephraim, 452 U.S. 61, 65 (1981).

order to do so.   The ordinance places the burden of achieving its
stated goals solely on those wishing to play music.   Requiring
such persons to shoulder the burden violates the Equal Protection
Clause.

Harwin v. Goleta Water District, 953 F.2d 488 (9th Cir.
1991), is instructive.   There, the Ninth Circuit held invalid on
equal protection grounds an ordinance that disqualified a board
member of the Goleta Water District from considering a water
service application if she had received a $250 campaign
contribution from the applicant, but not if she had received a
$250 campaign contribution from an opponent of the application.
The court found that the ordinance burdened only applicants'
First Amendment rights to freedom of political association;
opponents' First Amendment rights were not burdened.   The Water
District argued that the contribution limitation was aimed at
curbing corruption and the appearance of corruption.   However,
the Water District failed to "show[] that the distinction drawn
by its ordinance between applicants and opponents of water
service applications serves to prevent corruption and the
appearance of corruption."   Id. at 490.   Hence, the ordinance
violated the Equal Protection clause.   Similarly, here, the City
has not justified treating music differently from other forms of
protected speech that could occur outside during the proscribed
times and that could be annoying and sleep disruptive.

The City argues that in enacting the ordinance "[the
City] didn't want to abate noises that either it doesn't have a
problem with now or that are already covered under other
ordinances."   (Trans. at 26:6-8).   However, the City has

18

1    presented no evidence suggesting that it has unique problems with

2    music causing sleep disturbance to the exclusion of other forms

3    of protected speech during 10:00 p.m. and 8:00 a.m or that other

4    types of noise are covered under other ordinances.  It was

5    represented to the court at oral argument that "[t]his kind of

6    ordinance doesn't exist anywhere on the planet other than in

7    Citrus Heights."  (Trans. at 10:18-19).  The City has not shown

8    that it faces such unique problems that it needs to place

9    discriminatory burdens on people who play music to the exclusion

10   of other forms of speech.

11       F.   Severability

12           "Whether partial invalidation is appropriate depends on

13   the intent of the [C]ity in passing the ordinance, and whether

14   the balance of the ordinance can function independently."  Desert

15   Outdoor Adver. v. City of Moreno Valley, 103 F.3d 814, 821 (9th

16   Cir. 1995) (internal quotations omitted).  "The standard for

17   determining the severability of an unconstitutional provision is

18   well established: Unless it is evident that the Legislature would

19   not have enacted those provisions which are within its power,

20   independently of that which is not, the invalid part may be

21   dropped if what is left is fully operative as a law."  Alaska

22   Airlines, Inc. v. Brock, 480 U.S. 678, 684 (1987) (internal

23   quotations omitted).

24           The ordinance contains a severability clause, which

25   allows the court to remove the unconstitutional provision of the

26   ordinance while leaving the remaining portions of the ordinance

27   in effect.  Section 6 of the ordinance provides:

28           If any section, subsection, subdivision, sentence,

19

clause, or phrase in this Ordinance or any part thereof is for any reason held to be unconstitutional or invalid, or ineffective by any court of competent jurisdiction, such decision shall not affect the validity or effectiveness of the remaining portions of this Ordinance or any part thereof.  The City Council hereby declares that it would have passed each section irrespective of the fact that any one (1) or more subsections, subdivisions, sentences, clauses, or phrases be declared unconstitutional, invalid, or ineffective.

(Ordinance No. 99-16 § 6).  The ordinance is divided into several sections, and only section 5 concerns a CUP requirement for outdoor amplified music, which, as discussed above, is unconstitutionally vague, overbroad, and violates the Equal Protection Clause.  Section 5 amends the Citrus Heights Zoning Code to add Article 11, which pertains to late night outdoor amplified music.  The remaining sections can function independently of section 5.  For example, section 2 rescinds provisions of the Citrus Heights Zoning Code pertaining to CUP requirements for "dancing in a bar or restaurant" and "live or amplified music."

However, the other provisions within section 5 cannot function independently if the provision requiring a CUP "in any zone set forth in the City's Zoning Code for any use involving amplified music at an outdoor location between the hours of 10:00 p.m. and 8:00 a.m." is severed.  The remainder of section 5 addresses the purpose of the CUP requirement for late night outdoor amplified music as well as procedures for obtaining a CUP.  Without the core provision requiring a CUP for late night outdoor amplified music, the remaining provisions have no purpose.  Thus, all of section 5 must be severed and not merely the provision requiring a CUP.

20

III.   Conclusion

     For the reasons set forth above, plaintiffs' motion for summary judgment is granted on the grounds that the ordinance is vague, overbroad, and violates the Equal Protection Clause.  "A successful challenge to the facial constitutionality of a law invalidates the law itself."  4805 Convoy, Inc. v. City of San Diego, 183 F.3d 1108, 1111 (9th Cir. 1999) (internal quotations omitted).

     Section 5 of Ordinance No. 99-16 is declared unenforceable.  Based upon the express language of the severability clause, all of the remaining sections of the ordinance shall remain valid and in effect.[9]

     IT IS SO ORDERED.

DATED: August 7, 2000

                    WILLIAM B. SHUBB
                    UNITED STATES DISTRICT JUDGE

---

     [9]   Because the court finds the ordinance to be constitutionally infirm on the above grounds, the court does not consider plaintiffs' other arguments; i.e., that the ordinance constitutes a prior restraint and the application fee for a CUP for late night outdoor amplified music is unconstitutionally excessive.

21

United States District Court
for the
Eastern District of California
August 8, 2000

* * CERTIFICATE OF SERVICE * *

2:99-cv-01984

McCray

v.

Citrus Heights

---

I, the undersigned, hereby certify that I am an employee in the Office of
the Clerk, U.S. District Court, Eastern District of California.

That on  August 8, 2000, I SERVED a true and correct copy(ies) of
the attached, by placing said copy(ies) in a postage paid envelope
addressed to the person(s) hereinafter listed, by depositing said
envelope in the U.S. Mail, by placing said copy(ies) into an inter-office
delivery receptacle located in the Clerk's office, or, pursuant to prior
authorization by counsel, via facsimile.

George Warren Malcolm Mull                SH/WBS
Law Offices of George W Mull
1012 38th Street                          MG/DAD
Sacramento, CA  95816

Michael H Remy
Remy Thomas and Moose
455 Capitol Mall
Suite 210
Sacramento, CA  95814

Jack L. Wagner, Clerk

BY: _____
Deputy Clerk